# TIMES PUBLISHING COMPANY, et al. v SARASOTA COUNTY SHERIFF'S DEPARTMENT, et al.

## Case No. 83-3992-CA-01

Twelfth Judicial Circuit, Sarasota County

February 25, 1985

### APPEARANCES OF COUNSEL

**George K. Rahdert** for plaintiffs.

**Charles D. Bailey, Jr.,** for defendants.

RICHARD H. BAILEY, Circuit Judge.

THIS CAUSE came before the Court for final hearing and the Court having considered the pleadings, heard testimony and admitted evidence and having considered certain documents in camera, says:

## DISCUSSION

Petitioners/Plaintiffs are Times Publishing Company d/b/a *St. Petersburg Times* newspaper (hereinafter *"Times"*) and Frank DeLoache, a news reporter for the *Times* (hereinafter *"DeLoache"*). Respondents/Defendants ae Sheriff Jim Hardcastle, Sheriff of Sarasota County, and his successor in office for a short time during the pendency of these proceedings, Geoffrey Monge. The Sarasota County Sheriff's Department is not a legal entity. The case arose during the course of the *Times'* news coverage during 1983 and early 1984 of Hardcastle and his Department.

Plaintiffs seek relief under the provisions of Florida Statutes, Chapter 119-Public Records. Plaintiffs allege that they have sought access to certain public records of the Sheriff of Sarasota County.

I. Plaintiffs claim that Sheriff Jim Hardcastle and acting Sheriff Geoffrey Monge:

i. Refused the Plaintiffs access to certain public records.

ii. Refused to permit Plaintiffs to inspect and copy public records under reasonable conditions.

iii. Having excised portions of records which were produced.

iv. Have destroyed certain public records.

v. Became more reluctant to release certain public records as Plaintiffs' requests for those records became more frequent.

As a result of these allegations the Plaintiffs seek a writ of mandamus compelling the Defendant, Jim Hardcastle (hereinafter "Hardcastle") and Defendant Geoffrey Monge (hereinafter "Monge") to produce certain records and a mandatory injunction requiring Defendants to comply with Chapter 119.

II. The Defendants assert that:

i. They have produced all nonexempt records requested by Plaintiffs which are in existence.

ii. They have only withheld documents which are exempt under certain provisions of Chapter 119.

iii. They have only excised those portions of documents which are exempt under certain provisions of Chapter 119.

iv. They have at all times acted reasonably and in compliance with Chapter 119.

While denying that they have violated Chapter 119, Defendants have stipulated that they will comply with all provisions of the statute in the future. Defendants assert that mandamus is not appropriate to compel the production of documents which are exempt under Chapter 119.

Section 119.01 provides "it is the policy of this state that all state, county and municipal records shall at all times be open for a personal inspection by any person."

The chapter provides throughout that it shall be interpreted in accordance with reasonableness and good faith.

The present case indicates that there exists among the Parties a strong disagreement as to the interpretation of the "reasonable" criteria replete throughout Chapter 119.

From the Defendants' standpoint the "reasonable" requests of the Defendants were physical and economic constraints designed to preclude or thwart inspection, examination and copying of public records. From the Plaintiffs' side the Defendants are trying to hide public records under the guise of statutory exemption with the Plaintiffs finding themselves believing that the "goat was in charge of the cabbage patch" since it was the Defendants making the decision that an "exemption" existed as to the records of the Defendants.

Based upon the evidence presented the Court makes the following findings of facts:

### FINDINGS OF FACT

A. Plaintiff DeLoache is a reporter for Plaintiff, Times Publishing Company; Defendant Hardcastle was Sheriff of Sarasota County, except for a short period of time during 1984 when Defendant Monge was Acting Sheriff.

B. The Sheriff is a constitutional officer and his official records are therefore public records of an agency within the definition of Section 119.011.

C. Sometime prior to June, 1983, Plaintiff DeLoache was assigned to report on the Sarasota County Sheriff's Department and beginning around June of 1983 the Plaintiff DeLoache, began making requests for examination of public records under the custody of Defendant Hardcastle (hereinafter "records request"). (T-35).

D. In September of 1983, Plaintiff DeLoache, requested personnel records of Deputy Sterling Boomhower (hereinafter "Boomhower re-cords") and also copies of bank records regarding reparation funds, being a part of funds available to the Defendant's Narcotics Enforcement Unit (hereinafter NEU funds) (T-36). (Plaintiffs' Exhibit #1).

E. Plaintiff DeLoache was shown the personnel file of Boomhower within a day (T-37).

F. Earlier in the year Plaintiff DeLoache had been supplied an initial set of copies of Court orders of reparation payments, being part of the NEU Funds (T-35) but did not receive any additional bank records as requested in Plaintiffs' Exhibit #1. (T-37).

Hardcastle admitted that he routinely threw away all banking records concerning the NEU fund as they were received.

Monge, Hardcastle's appointed successor in office during his own period of suspension, did produce photocopies of cancelled checks and monthly statements from the various bank accounts, albeit all account numbers, deposit and withdrawal amounts, and account balances had been excised.

G. Two bank books were produced for inspection in camera by this COurt, December 14, 1984.

H. In October, Plaintiff DeLoache requested a large volume of documents related to all "budgetary records concerning bidding, leasing and purchasing of the Department's helicopter, two airplanes, boats and automobiles." (T-41). The documents requested went back for over 10 years. (T-42).

I. By mid-September 1983, the door key relationship between Plaintiff DeLoache and Defendant Hardcastle had deteriorated to the extent that Defendant Hardcastle required Plaintiff to make all requests for appointments, in writing (Plaintiffs' Exhibit #3) and Plaintiff DeLoache was under the impression he had to make records requests in writing, as well (T-40) (Plaintiffs' Exhibit #4). The Defendant Hardcastle testified that the purpose of this requirement was to clarify the description of the documents requested so as to eliminate misunderstandings, assist DeLoache and speed up the inspection process. (T-113).

J. Eventually Defendant Hardcastle assigned a Captain Jacobson in the Department to respond to DeLoache's requests and to be present while DeLoache made records inspections. DeLoache and the *Times* were charged $20 per hour for that employee's time, (T-43) and the inspections could only occur subject to the availability of that employee

141

(T-44). Defendant Hardcastle testified that the purpose of this employee was to assist and supervise the location of certain documents (T-113).

K. On one occasion the Defendant imposed a requirement that DeLoache bring his own copying machine. The rule was based on misunderstanding of the law and was in effect less than 24 hours (T-43-44). While the Plaintiffs made much of this, there was evidence of unreasonable delay.

L. Sometimes when DeLoache requested to inspect personnel files of employees, the request was delayed until the employee was notified and, if the employee so desired, until the employee was present (T-44 and T-45). On at least one occasion DeLoache and the *Times* were charged for the time of the employee whose file was being inspected and the time of a personnel department employee who was also present. (T-46).

M. DeLoache also requested "internal investigation" documents concerning one of Hardcastle's deputies. A written reprimand of the deputy was made readily available to DeLoache upon request (T-48), but Hardcastle did not produce any other internal investigation documents (T-49). Hardcastle refused disclosure of a certain rekport written by this deputy, asserting that the report was shielded from disclosure as active criminal investigative information (Plaintiffs' Exhibit #11). At his deposition Hardcastle revealed the existence of a written incident report from the Charlotte County Sheriff's Department, which led to the eventual reprimand of the Sarasota deputy. At the final hearing on this matter on December 11, 1984, Hardcastle disclosed this latter document. At trial the Defendant Hardcastle testified that the Defendant involved had pleaded guilty to charges filed against him in Sarasota County but Hardcastle maintains that the deputy's written report remains exempt because of active ongoing investigations by other state and federal authorities. Defendant Hardcastle did not identify the ongoing investigations.

N. In November, 1984 Plaintiff DeLoache requested certain financial documents including "capital assets list," the Department's master list of vendors, bidding documents for the Department's aircraft and motor vehicles and ledger cards for several automobile firms (T-51). Plaintiff DeLoache was requested to specifically identify documents (T-54). Searching for some of these documents required that DeLoache, in the company of one of the Defendant Hardcastle's employees search old and inactive records in a warehouse in Venice. Some records were found and some were not. While apparently Plaintiff DeLoache had

142

been told that there was a master list of vendors (T-127), Defendant Hardcastle testified at final hearing that no master list of vendors existed (T-128), and that no bidding documents had been found (T-130). Defendant Hardcastle disposed of the fleet bid information on an annual disposal basis (T-128) and did not clear this document disposal plan through the Division of Archives because he did not believe he was required to keep those types of documents (T-129).

O. On the positive side, in complying with the requests from the Plaintiffs, the Defendants:

i. Produced a voluminous amount of documents (T-42).

ii. Made documents available for inspection at the Venice, Florida warehouse (T-71).

iii. Advised Plaintiff that he was welcome to visit the Department and view public records at any time (T-64).

iv. Was only charged 2 cents per copy (T-44).

v. Was promptly provided copies of documents he requested by mail when DeLoache could not personally come to the office. (T-78).

vi. A list of documents was created by the Defendants to assist the Plaintiff even though not required by statute (T-72).

vii. Computer printouts were provided to assist DeLoache in finding documents (T-74).

## CONCLUSIONS OF LAW

AA. All documents in existence when requested have been produced for inspection by the Defendants except those which are asserted by the Defendants as exempt from inspection under Chapter 119, and the two bank books which were produced in camera.

BB. The Court makes no findings as to what materials are exempt. It further holds that the ultimate decision must lie within the discretion of the agency based on its expertise and special knowledge of the various investigations which may be pending relative to the persons and subject matter contained in the report. The Court agrees that a writ of mandamus is generally proper to compel the production of public records. However, mandamus will not lie where administrative discretion must be exercised. *Escambia County v. Flowers*, 390 So.2d 380 (Fla. 1st D.C.A. 1980). Counsel for both sides have cited numerous cases on the issue of mandamus. However, both admit that no cases exist on point concerning mandamus as appropriate for the production of records exempt under Section 119.07(3)(d) through (k). This Court finds that there is an element of discretion in these

exemptions and the Courts must recognize the strong policy in favor of confidentiality of ongoing police investigations. *Wisher v. New-Press Publishing Co.*, 310 SO.2d 345 (Fla. 2d D.C.A. 1975); *Lee v. Beach Publishing Co.*, 173 So.2d 440 (Fla. 1937). The very nature of police investigations demands that the head of a law enforcement agency, when faced with a request under the public records act, be allowed discretion to determine whether a particular record is exempt as part of an ongoing criminal investigation or criminal intelligence operation. *State v. Johnson*, 284 SO.2d 198 (Fla. 1973).

CC. The bank books produced in camera are determined by this COurt not to be exempt and shall be produced to Plaintiffs for inspection. The Court finds that the Defendants' assertion of the exemptions under these documents were reasonable in light of the nature of the undercover investigations and criminal intelligent information.

DD. Defendant Hardcastle's practice of processing only written requests for public records inspection, of permitting those inspections only in the presence of a particular Sheriff's Department employee, of charging for that employee's and other employees' time, of not permitting personnel files inspections until the particular affected employee had been notified and then only subject to that employee's availability when taken in their totality constitutes a violation of Chapter 119, Florida's Public Records Act. The enumerated policies and practices had the intended effect of discouraging, intimidating and at the least, delaying requests for inspections of public records. Fla. Stat. § 119.07(1)(a) (1983) requires that custodians of public records "shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under supervision by the custodian of the records or his designee." This subsection of the Public Records Act

> refers not to conditions which must be fulfilled before review is permitted but to reasonable regulations that would permit the custodian of records to protect them from alteration, damage, or destruction and also to insure that the person reviewing the records is not subjected to physical constraints designed to preclude review.

*Tribune Co. v. Canella*, 458 So.2d 1075 (Fla. 1984), quoting *Wait v. Florida Power & Light Co.*, 372 So.2d 420, 425 (Fla. 1979).

Respondents' "special" rules when taken as a whole constitute the very types of "physical constraints designed to preclude review" that have been condemned by the Florida Supreme Court.

That is not to say that one or more of the practices enumerated

144

above, under certain circumstances, would always be violations of Chapter 119.

EE. Defendant Hardcastle acted unreasonably in requiring the Plaintiffs to inspect personnel files only in the presence of the specific employee in question and in charging for the employee's time. Defendant Hardcastle also acted unreasonably in requiring Captain Jacobson to be present while Plaintiff DeLoache made records inspections.

FF. Despite the apparent confusion over the existence or nonexistence of certain financial records of the Defendants, the Court holds that Plaintiffs have inspected those records that still exist.

GG. While it would appear the Defendant Hardcastle's destruction of bank records of NEU Funds and possibly bidding documents would be contrary to the provision of Chapter 119, nevertheless, Plaintiffs have no cause of action nor claim for relief arising out of any destruction of records by the Sheriff's Department. There is no showing that any of the destruction of the records was for the purpose of prohibiting Plaintiffs from inspecting public records. The statute does not provide for any relief in this case and the Court cannot create a private cause of action in the absence of a clear legislative intent. *Colonial Penn Communities Inc. v. Crosley*, 443 So.2d 1030 (5th D.C.A. 1984).

HH. Defendants while denying any violations have stipulated that they will abide by the terms of Chapter 119 in the future, a mandatory injunction ordering compliance in the future, with Chapter 119, is not necessary.

Therefore, it is

ORDERED AND ADJUDGED:

1. The Defendant Jim Hardcastle, as Sheriff of Sarasota County or his successor in office, shall produce the two bank books which were produced in camera to this Court in response to Item Number 1 of Plaintiffs' request to produce at final hearing.

2. Defendants are ordered to refund within thirty (30) days to Plaintiffs, Times Publishing Company, the moneys paid as and for the salary time of Captain Robert Creamer.

3. In light of the conclusion of law set forth in Paragraph EE above, the Court specifically retains jurisdiction for the purposes of awarding the Plaintiffs reasonable attorneys fees and costs.

DONE AND ORDERED in Chambers, at Sarasota County, this 25th day of February, 1985.

## ORDER GRANTING PETITIONER'S MOTION FOR REHEARING

ALAN R. DAKAN, Acting Circuit Judge.

This cause came on to be heard on the Petitioner's motion for rehearing, and the Court having heard arguments of counsel, having reviewed the trial transcripts in this cause and being otherwise duly advised in the premises it is thereupon

ORDERED AND ADJUDGED as follows:

1. The Petitioner's motion for rehearing is granted. The Court notes the difficulties placed on all parties and on the Court to the unfortunate illness and untimely passing of Judge Bailey who originally heard this matter. The Court further notes that Sheriff Geoffrey Monge, who is party to this action by virtue of his position in office, was not the Sheriff at those times material to this cause.

2. The court precedes from [sic] paragraph B.B. from the Final Judgment entered herein. The Court specifically notes that Judge Bailey did not have the benefit of the Second District's decision in the *Tribune Company and Times Publishing Co. et al. v. In Re: Public Records*, Case No. 85-1776, July 9, 1986. On the basis of the foregoing decision and authorities cited therein, the Court specifically finds that it is the Court's duty to make findings as to what materials are exempt from the public records law, and further, it is for the discretion of the courts rather than for the discretion of law enforcement agencies to determine whether certain disputed records should be reviewed *in camera*, and whether such records are exempt from public records disclosure as being good-faith ongoing investigative records. Accordingly, the Court reserves jurisdiction to hear argument as to whether the NEU fund bank records are exempt from public records disclosure as being good-faith ongoing investigative records. The Court directs Respondents to assemble such records for further proceedings should the parties be unable to reach an agreement as to the disclosure of said records or excerpted portions thereof.

3. With respect to the question of reimbursement for the time expended by Captain Robert Creamer and Captain Earl Jacobson, the Final Judgment is construed to mean that the Sarasota County Sheriff's Department may not impose a charge upon members of the public for the time spent by any individual member of the department in monitoring public inspection of that member's own personnel record. Moreover, the department may charge a typical clerical supervisor's rate for observing a records inspection to be sure that records are not

146

removed from the department, but if the department elects to use a higher paid member such as Captain Jacobson for such supervision, the differential in compensation rates shall be absorbed by the Department.

DONE AND ORDERED in Chambers this 8th day of August, 1986.